**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Farhi Saeed bin Mohammed,** )<br>     **Detainee,** )<br>     **Guantanamo Bay Naval Station** )<br>     **Guantanamo Bay, Cuba;** )<br>)<br>**Moazzam Begg,** )<br>)<br>     **as Next Friend of Farhi Saeed** )<br>     **bin Mohammed;** )<br>)<br>*Petitioners/Plaintiffs*, )<br>)<br>               **v.** )<br>)<br>)<br>)<br>)<br>**GEORGE W. BUSH,** )<br>     **President of the United States** )<br>     **The White House** )<br>     **1600 Pennsylvania Ave., N.W.** )<br>     **Washington, D.C. 20500;** )<br>)<br>**DONALD RUMSFELD,** )<br>     **Secretary, United States** )<br>     **Department of Defense** )<br>     **1000 Defense Pentagon** )<br>     **Washington, D.C. 20301-1000;** )<br>)<br>**ARMY BRIG. GEN. JAY HOOD,** )<br>     **Commander, Joint Task Force - GTMO** )<br>     **JTF-GTMO** )<br>     **APO AE 09360; and** )<br>)<br>**ARMY COL. MIKE BUMGARNER,** )<br>     **Commander, Joint Detention** )<br>         **Operations Group - JTF-GTMO,** )<br>     **JTF-GTMO** )<br>     **APO AE 09360,** )<br>)<br>*Respondents/Defendants*. ) | **PETITION FOR WRIT<br>OF HABEAS CORPUS<br>AND COMPLAINT<br>FOR DECLARATORY<br>AND INJUNCTIVE<br>RELIEF**<br><br>**No. _____** |

**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

Petitioner Farhi Saeed bin Mohammed (hereinafter "Petitioner bin
Mohammed") seeks the Great Writ.  A citizen of Algeria, he acts on his own behalf
and through his Next Friend, Moazzam Begg. Petitioner bin Mohammed is a civilian
wrongly classified as an "enemy combatant" by the President of the United States,
and is being held virtually *incommunicado* in military custody at the United States
Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), without basis, without
charge, without access to counsel and without being afforded any fair process by
which he might challenge his detention. Petitioner bin Mohammed is being held by
color and authority of the Executive, and in violation of the Constitution, laws and
treaties of the United States as well as customary international law.  Accordingly, this
Court should issue a Writ of Habeas Corpus compelling Respondents either to release
Petitioner bin Mohammed or to establish in this Court a lawful basis for Petitioner bin
Mohammed's detention.  This Court should also order injunctive and declaratory
relief.

Pursuant to the President's authority as Commander-in-Chief, his authority
under the laws and usages of war, or under the November 13 Executive Order,
Respondents George W. Bush, President of the United States, Donald H. Rumsfeld,
U.S. Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint
Task Force-GTMO, and Army Colonel Mike Bumgarner, Commander, Joint
Detention Operations Group, Joint Task Force-GTMO, are either ultimately

2

responsible for or have been charged with the responsibility of maintaining the custody and control of the detained Petitioner at Guantánamo.

## I.   JURISDICTION AND VENUE

1.   Petitioners bring this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3) and 2242.  Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth, Sixth, and Eighth Amendments to, the United States Constitution. Because they seek declaratory relief, Petitioners also rely on Fed. R. Civ. P. 57.

2.   This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus, and to entertain the Petition filed by Moazzam Begg, the Next Friend of Petitioner bin Mohammed, under 28 U.S.C. § 2242.  This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II.   PARTIES

3.   Petitioner bin Mohammed is an Algerian citizen who is presently incarcerated at Guantánamo and held in Respondents' unlawful custody and control.  Mr. Begg was himself detained at Guantanamo Bay, Buba, but repatriated to the U.K. in 2004.  Mr. Begg rendered a statement of his next friend status in behalf of Petitioner bin Mohammed and three other detainees including

authorization of the Center for Constitutional Rights to provide counsel for

Petitioner bin Mohammed and in behalf of Petitioner bin Mohammed to

petition for legal redress.  A copy of the statement is appended to this Petition.

This petition is filed pursuant to such authorization.

4.    Respondent George W. Bush is the President of the United States and

Commander-in-Chief of the United States Military.  Petitioner bin

Mohammed is being detained pursuant to President Bush's authority as

Commander-in-Chief, under the laws and usages of war or, alternatively,

pursuant to the Executive Order of November 13, 2001, Detention, Treatment,

and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg.

57,833 (November 13, 2001) ("Executive Order").  President Bush is

responsible for Petitioner bin Mohammed's unlawful detention and is sued in

his official capacity.

5.    Respondent Donald Rumsfeld is the Secretary of the United States

Department of Defense.  Pursuant to the President's authority as Commander-

in-Chief, under the laws and usages of war or, alternatively pursuant to the

Executive Order, Respondent Rumsfeld has been charged with the

responsibility of maintaining the custody and control of Petitioner bin

Mohammed.  He is sued in his official capacity.

6.    Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-

GTMO, the task force running the detention operation at Guantánamo.  He has

supervisory responsibility for Petitioner bin Mohammed and is sued in his

official capacity.

4

7.      Respondent Army Col. Mike Bumgarner is the Commander of the Joint
        Detention Operations Group and the JTF-GTMO detention camps, including
        the U.S. facility where Petitioner bin Mohammed is presently held. He is the
        immediate custodian responsible for Petitioner bin Mohammed's detention
        and is sued in his official capacity.

8.      Respondents are directly responsible for any activities undertaken by or under
        the supervision of any agents or employees acting on their behalf, or of agents
        or employees of private contractors ("contractor employees") with whom any
        agency under Respondents' authority or supervision has contracted for the
        provision of services at Guantanamo.  All references to Respondents' actions
        in this Petition include activities of Respondents initiated by predecessors in
        office and continued by them and also include activities performed by
        Respondents' (or their predecessors') agents or employees, other government
        agents or employees or contractor employees.

## III.   STATEMENT OF FACTS

9.      Petitioner bin Mohammed seeks to enforce his right to a judicial
        determination by an appropriate and lawful authority whether there is a factual
        and legal basis for Respondents' determination that he is either an "enemy
        combatant" [as defined by the United States Supreme Court in *Hamdi v.
        Rumsfeld*, 224 S.Ct. 2633, 2639 (2004)] or an "enemy combatant" as that term
        is defined and used by the Executive in the Combatant Status Review
        Tribunals.

10.    Since mid-2002 Petitioner bin Mohammed has been and even now remains incarcerated at the U.S. Naval base at Guantánamo, a territory over which the United States exercises exclusive jurisdiction and control.

11.    Petitioner bin Mohammed has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

12.    Upon information and belief, Petitioner bin Mohammed desires to pursue in United States courts every available legal challenge to the lawfulness of his detention.

**The Joint Resolution**

13.    In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan.  On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

14.    On information and belief, as Petitioner bin Mohammed, who is older that most detainees, did not participate in the armed conflict at any point in time. He is not, therefore, properly detained pursuant to President Bush's authority

6

as Commander-in-Chief, under the laws and usages of war, or under the Joint Resolution.

15.     Upon information and belief, Petitioner bin Mohammed is not, and has never been, a member of Al Qaeda or any other terrorist group, did not commit any violent act against any American person or espouse any violent act against any American person or property, had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001 or any act of international terrorism attributed by the United States to Al Qaeda or any other terrorist group.  He is not properly subject to President Bush's authority as Commander-in-Chief or under the laws and usages of war.

**The Executive Order**

16.     On November 13, 2001, Respondent Bush issued an Executive Order authorizing Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

i.      is or was a member of the organization known as al Qaeda;

ii.     has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

iii.    has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001). President Bush must make this determination in writing.  The Executive Order was neither authorized nor directed by Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

17.   The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview.  It establishes no standards governing the exercise of his discretion.  Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face.  The Executive Order authorizes detainees to be confined indefinitely without charges.  It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor the rights to notice of consular protection or to consular access at the detainee's request.  It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and contains no provision for recourse to an Article III court.  In fact, the Executive Order expressly bars review by any court.  The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than the President Bush's written determination that an individual is subject to its terms.

18.   The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioner bin Mohammed was made by Respondents in the United States and in this judicial district, the decision to detain Petitioner bin Mohammed at Guantánamo was made in the United

States and in this judicial district, and the decision to continue detaining

Petitioner bin Mohammed, was, and is, being made by Respondents in the

United States and in this judicial district.

19.     President Bush has never certified or determined in any manner, in writing or

otherwise, that Petitioner bin Mohammed is subject to the Executive Order.

20.     Petitioner bin Mohammed is not properly subject to the Executive Order.

21.     Petitioner has not been, and is not being, detained lawfully either pursuant to

the Executive Order, President Bush's authority as Commander-in-Chief

and/or under the laws and usages of war.  Petitioner was not arrested or

detained by the United States in the course of an armed conflict.  Petitioner

bin Mohammed is not properly detained under President Bush's authority as

Commander-in-Chief or under the laws and usages of war.

**Guantánamo**

22.     On or about January 11, 2002, the United States military began transporting

prisoners captured in Afghanistan and other U.S. and foreign locations to

Camp X-Ray at Guantánamo.  In April 2002, all prisoners were transferred to

a Camp Delta, a more permanent prison facility at Guantánamo.  Currently,

prisoners are housed in Camp Delta and Camp Five, an additional maximum-

security interrogation and detention center.

23.     Prisoners incarcerated at Guantánamo are entitled to test the legality of their

detention in the federal courts.  *Rasul v. Bush*, 542 U.S. __, 124 S.Ct. 2686,

2698 (June 28, 2004).

24.    By at least June 30, 2002 [the precise date being unknown to counsel, but
       known to Respondents], the United States military had captured Petitioner bin
       Mohammed abroad and taken him to Guantánamo, where he has been held
       ever since, in the custody and control of Respondents.

**The Conditions of Detention at Guantanamo**

25.    Since gaining control of Petitioner bin Mohammed, the United States military
       has held him virtually *incommunicado.*

26.    Upon information and belief, Petitioner bin Mohammed has been or will be
       forced to provide involuntary statements to Respondents' agents at
       Guantánamo and has been or will be interrogated repeatedly by agents of the
       United States Departments of Defense and Justice, and the Central
       Intelligence Agency, though he has not been charged with an offense and has
       not been notified of any pending or contemplated charges.  He has not
       appeared before a lawful military or civilian tribunal, and has not been
       provided access to counsel or the means to contact and secure counsel.  He
       has not been adequately informed of his rights under the United States
       Constitution, the regulations of the United States Military, the Geneva
       Convention, the International Covenant on Civil and Political Rights, the
       American Declaration on the Rights and Duties of Man, the 1954 Convention
       Relating to the Status of Refugees or customary international law.  Indeed,
       Respondents have taken the position that Petitioner bin Mohammed should
       not be informed of these rights.  As a result, Petitioner bin Mohammed lacks

any ability to protect or to vindicate his rights under domestic and
international law.

27.　　Upon information and belief, Petitioner bin Mohammed has been forced to
provide involuntary statements to Respondents' agents, employees, and/or
contract employees at Guantanamo.

28.　　Upon information and belief, Petitioner bin Mohammed has been held under
conditions that violate his constitutional and international rights to dignity and
freedom from torture and from cruel, inhuman and degrading treatment or
punishment.  *See*, *e.g.*, United Nations Press Release, "United Nations Human
Rights Experts Express Continued Concern About Situation of Guantánamo Bay
Detainees," Feb. 4, 2005; International Committee of the Red Cross, Press
Release, "The ICRC's Work at Guantánamo Bay," Nov. 30, 2004; International
Committee of the Red Cross, Operational Update, "US Detention Related to the
Events of September 11, 2001 and Its Aftermath - the Role of the ICRC," July 26,
2004; Amnesty International, *United States of America: Human Dignity Denied:
Torture and Accountability in the 'War on Terror'*, at 22 (Oct. 27, 2004)
(available at http://web.amnesty.org/library/Index/ENGAMR
511452004); *see also* Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*,
The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5.
Indeed, many of these violations – including isolation for up to 30 days, 28-hour
interrogations, extreme and prolonged stress positions, sleep deprivation, sensory
assaults, removal of clothing, hooding, and the use of dogs to create anxiety and
terror – were actually interrogation techniques approved for use at Guantánamo

by the most senior Department of Defense lawyer.  *See* Action Memo from

William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27,

2002); *Pentagon Working Group Report on Detainee Interrogations in the Global*

*War on Terrorism: Assessment of Legal, Historical, Policy and Operational*

*Considerations*, at 62-65 (Apr. 4, 2003).[1]

29.    In a confidential report to the United States government, the ICRC charged

the U.S. military with intentional use during interrogations of psychological

and physical coercion on prisoners at Guantánamo that is "tantamount to

torture."  *See* Neil A. Lewis, "Red Cross Finds Detainee Abuse in

Guantánamo," *New York Times*, Nov. 30, 2004, at A1.  The report includes

claims that doctors and other medical workers at Guantánamo participated in

planning for interrogations.  *Id.*; *see also* M. Gregg Bloche and Jonathan H.

Marks, "When Doctors Go to War," *New England Journal of Medicine*, Jan.

6, 2005, at 3-4.  Since details of the ICRC's report emerged, new revelations

of abuse and torture at Guantánamo have appeared, including FBI memos

detailing torture and "highly aggressive interrogation techniques" including

24-plus hour interrogations involving temperature extremes, dogs, prolonged

isolation, and loud music.  *See Guantánamo: An Icon of Lawlessness,*

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at
Guantanamo are set out at length in a statement by numerous released British
detainees.  *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement:
Detention in Afghanistan and Guantanamo Bay*, 300, *at* http://www.ccr-
ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf).    The
Department of Defense also informed the Associated Press that a number of
interrogators at Guantanamo have been demoted or reprimanded after investigations
into accusations of abuse at the facility.  *See Report Details Guantanamo Abuses*,
Assoc. Press, Nov. 4, 2004.

Amnesty International, Jan. 6, 2005, at 3-5; *see also* Neil A. Lewis, "Fresh Details Emerge on Harsh Methods at Guantánamo," *New York Times*, Jan. 1, 2005, at A11; Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos," *Washington Post*, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq Inmates," *New York Times*, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of Detainees at Guantánamo Bay," *Washington Post*, Dec. 21, 2004, at A1; Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantánamo," *New York Times*, Dec. 7, 2004, at A19. Even more recently, the Associated Press has reported allegations that female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees. Associated Press, *Gitmo Soldier Details Sexual Tactics*, Jan. 27, 2005.

30.     The unlawful and unconstitutional interrogation techniques used by Respondents at Guantánamo include not only physical and psychological abuse but also other impermissible conduct contrary to due process requirements, including, upon information and belief, having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information from the detainees.  *See* Sam Hannel, "Lawyers Describe Guantánamo Detainees," *Seattle Post-Intelligencer*, Jan. 19, 2005.

31.     Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by U.S.

military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush.  Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't Bind CIA," *New York Times*, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal, Gonzales Tells Senate," *Washington Post*, Jan. 18, 2005, at A4.

32.     In published statements, President Bush, Secretary Rumsfeld, and predecessors of Respondents Hood and Bumgarner, respectively, Brigadier General Michael Lenhert and Col. Terry Carrico, have proclaimed that the United States may hold the detainees under their current conditions indefinitely.  See, e.g., Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base.  He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . .  'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN.  Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards . . . .'"); John Mintz, "Extended Detention in Cuba Mulled," *The Washington Post*, February 13, 2002. ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees,

14

U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.".

33.     According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo indefinitely.  *See* Department of Defense Press Background Briefing of July 3, 2003, *at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited Feb. 14, 2005).

34.     Counsel for Respondents have also consistently maintained that the United States has reserved the right to hold the detained Petitioners under their current conditions indefinitely.  *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Or. Argument on Mot. to Dismiss at 22-24, statements of Principle Deputy Associate Att'y Gen. Brian Boyle; *see also* Dana Priest, "Long-Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1.  Moreover, the Government has recently acknowledged plans to begin constructing a new, more permanent facility at Guantánamo.  Christopher Cooper, "In Guantánamo, Prisoners Languish in a Sea of Red Tape," *Wall Street Journal*, Jan. 26, 2005, at A1; Associated Press, "Guantánamo Takes on the Look of Permanency," Jan. 9, 2005.

**Rendition**

35.     Upon information and belief, the United States has secretly transferred detainees to countries that routinely practice torture without complying with

the applicable legal requirements for extradition.  This practice, known as "rendition" or "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture.  *See* Jane Mayer, "Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program, *The New Yorker*, Feb. 14, 2005, at 106.  Rendition may also be used to frustrate the jurisdiction of U.S. courts.

36.   The U.S. government's practice of rendition has been well documented by various major American and international news organizations, including, *inter alia*, the *Washington Post*, *The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC").  According to the account,

> "Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence source.  The suspects have been taken to countries, . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics -- including torture and threats to families -- that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said."

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects," *Wash. Post*, Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt, that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

37.     Upon information and belief, Petitioner bin Mohammed is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture during interrogations and incarceration.

## IV.    CAUSES OF ACTION

FIRST CLAIM FOR RELIEF

(COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)

38.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

39.     By the actions described above, Respondents, acting under color of law, have violated and continue to violate common law principles of due process as well the Due Process Clause of the Fifth Amendment to the Constitution of the United States.  President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of law, and the remaining Respondents have implemented those orders. Respondents' actions deny Petitioner bin Mohammed the process accorded to persons seized and

detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice,  Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

40.     To the extent that Petitioner bin Mohammed's detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Petitioner.

41.     Accordingly, Petitioner bin Mohammed is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

SECOND CLAIM FOR RELIEF

(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

42.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

43.     By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner bin Mohammed to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

44.     Accordingly, Petitioner bin Mohammed is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

THIRD CLAIM FOR RELIEF

(GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

45.     Petitioners incorporate by reference all preceding paragraphs as if set forth

fully herein.

46.     By the actions described above, Respondents, acting under color of law, have

denied and continue to deny Petitioner bin Mohammed the process accorded

to persons seized and detained by the United States military in times of armed

conflict as established by specific provisions of the Third and Fourth Geneva

Conventions.

47.     Violations of the Geneva Conventions are direct treaty violations, are

violations of customary international law, and constitute an enforceable claim

under 28 U.S.C. § 2241 (c)(3).

48.     Respondents are liable for this conduct described above, insofar as they set the

conditions, directly and/or indirectly facilitated, ordered, acquiesced,

confirmed, ratified, and/or conspired to violate the Geneva Conventions.

49.     Accordingly, Petitioner bin Mohammed is entitled to habeas, declaratory, and

injunctive relief, as well as any other relief the court may deem appropriate.

FOURTH CLAIM FOR RELIEF

(INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW -
ARBITRARY DENIAL OF DUE PROCESS)

50.     Petitioners incorporate by reference all preceding paragraphs as if set forth

 fully herein.

51.     By the actions described above, Respondents have denied and continue to
        deny Petitioner bin Mohammed the due process accorded to persons seized
        and detained by the United States military in times of armed conflict as
        establish by customary international humanitarian and human rights law as
        reflected, expressed, and defined in multilateral treaties and other international
        instruments and domestic judicial decisions, and other authorities.

52.     Accordingly, Petitioner bin Mohammed is entitled to habeas, declaratory, and
        injunctive relief, as well as any other relief the court may deem appropriate.

FIFTH CLAIM FOR RELIEF

(ALIEN TORT STATUTE - TORTURE)

53.     Petitioners incorporate by reference all preceding paragraphs as if set forth
        fully herein.

54.      By the actions described above, the Respondents directed, ordered,
        confirmed, ratified, and/or conspired to bring about acts that deliberately and
        intentionally inflicted severe physical and psychological abuse and agony
        upon Petitioner bin Mohammed in order to obtain coerced information or
        confessions from him, punish or intimidate Petitioner bin Mohammed or for
        other purposes.  Among other abuses, detainees – including Petitioner bin
        Mohammed  have been subjected to one or more acts of being held in
        conditions of isolation; placed in constant vulnerability to repeated
        interrogation and severe beatings; kept in cages with no privacy; shackled
        with heavy chains and irons; placed in solitary confinement for minor rule
        infractions for prolonged periods of time; interrogated while shackled and

chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

55.     The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

56.     Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioner bin Mohammed .

57.     Petitioner bin Mohammed was forced to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief, and other relief to be determined at trial.

SIXTH CLAIM FOR RELIEF

(ALIEN TORT STATUTE - WAR CRIMES )

60.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

61.     By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of Petitioner bin Mohammed constitute war crimes

and/or crimes against humanity in violation of the law of nations under the
Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others,
the Fourth Geneva Convention, Common Article III of the Geneva
Conventions and Additional Protocols I and II of the Geneva Conventions as
well as customary international law prohibiting war crimes as reflected,
expressed, and defined in other multilateral treaties and international
instruments, international and domestic judicial decision, and other
authorities.

62.    As a result of Respondents' unlawful conduct, Petitioner bin Mohammed
has been and is forced to suffer severe physical and psychological abuse and
agony, and is therefore entitled to habeas, declaratory, and injunctive relief,
and such other relief as the court may deem appropriate.

SEVENTH CLAIM FOR RELIEF

(ALIEN TORT STATUTE – CRUEL, INHUMANE OR DEGRADING
TREATMENT)

65.    Petitioners incorporate by reference all preceding paragraphs as if set forth
fully herein.

66.    The acts described herein had the intent and the effect of grossly humiliating
and debasing Petitioner bin Mohammed, forcing him to act against his will
and conscience, inciting fear and anguish, and breaking his physical or moral
resistance.

67.    The acts described herein constitute cruel, inhuman or degrading treatment in
violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350,

in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

68.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner bin Mohammed.

69.    Petitioner bin Mohammed was forced to suffer severe physical and psychological abuse and agony and is entitled to declaratory and injunctive relief, as well as other relief to be determined at trial.

EIGHTH CLAIM FOR RELIEF

(ALIEN TORT STATUTE -
ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

70.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

71.    The acts described herein constitute arbitrary arrest and detention of Petitioner bin Mohammed in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

72.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner bin

Mohammed  in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

73.     As a result of Respondents' unlawful conduct, Petitioner bin Mohammed has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

NINTH CLAIM FOR RELIEF

(ALIEN TORT STATUTE- ENFORCED DISAPPEARANCE)

74.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

75.     By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioner bin Mohammed in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

76.     As a result of Respondents' unlawful conduct, Petitioner bin Mohammed has

        been and is deprived of his freedom, separated from his family, and forced to

        suffer severe physical and mental abuse, and is therefore entitled to

        declaratory and injunctive relief and such other relief as the court may deem

        appropriate.

TENTH CLAIM FOR RELIEF

(ARTICLE II OF THE UNITED STATES CONSTITUTION-
UNLAWFUL DETENTION)

77.     Petitioners incorporate by reference all preceding paragraphs as if set forth

        fully herein.

78.     Petitioner bin Mohammed is not, nor has he ever been, an enemy alien, lawful

        or unlawful belligerent, or combatant of any kind.  The Executive lacks the

        authority to order or direct military officials to detain civilians who are seized

        far from the theater of war or occupied territory or who were not "carrying a

        weapon against American troops on a foreign battlefield."  *Hamdi v.*

        *Rumsfeld*, 124 S.Ct. 2633, 2642 n.1 (2004).

79.     By the actions described above, President Bush has exceeded and continues to

        exceed the Executive's authority under Article II of the United States

        Constitution by authorizing, ordering and directing that military officials seize

        Petitioner bin Mohammed and transfer him to military detention, and by

        authorizing and ordering their continued military detention at Guantánamo.

        All of the Respondents acted and continue to act without lawful authority by

directing, ordering, and/or supervising the seizure and military detention of Petitioner bin Mohammed.

80.  The military seizure and detention of Petitioner bin Mohammed by the Respondents is *ultra vires* and illegal because it violates Article II of the United States Constitution.  To the extent that the Executive asserts that Petitioner's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner.

81.  To the extent that Respondents assert that their authority to detain Petitioner bin Mohammed derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

82.  Accordingly, Petitioner bin Mohammed is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

ELEVENTH CLAIM FOR RELIEF

(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

83.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

84.     Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See*, *e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

85.     By arbitrarily and capriciously detaining Petitioner bin Mohammed in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

86.     Accordingly, Petitioner bin Mohammed is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

TWELFTH CLAIM FOR RELIEF

(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS )

87.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

88.     By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner bin Mohammed the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

89.     Accordingly, Petitioner bin Mohammed is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

THIRTEENTH CLAIM FOR RELIEF

(VIOLATION OF THE APA – TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

90.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

91.     By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner bin Mohammed to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

92.    Accordingly, Petitioner bin Mohammed is entitled to habeas, declaratory, and

injunctive relief, as well as any other relief the court may deem appropriate.

FOURTEENTH CLAIM FOR RELIEF

(VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE
COURTS)

93.    Petitioners incorporate by reference all preceding paragraphs as if set forth

fully herein.

94.    Respondents, purportedly acting from a concern for national security,

consistently have contrived to intrude upon Petitioner bin Mohammed's right

to consult with counsel by conditioning counsel's access to Petitioner on

unreasonable terms, including classification/declassification procedures, all in

violation of Petitioner bin Mohammed's attorney-client privilege, his work

product privilege, and the Fifth and Sixth Amendments to the U.S.

Constitution.

95.    Accordingly, Petitioner bin Mohammed is entitled to habeas, declaratory, and

injunctive relief, as well as any other relief the court may deem appropriate.

FIFTEENTH CLAIM FOR RELIEF

(DUE PROCESS CLAUSE - RENDITION)

96.    Petitioners incorporate by reference all preceding paragraphs as if set forth

fully herein.

97.    Upon information and belief, Petitioner bin Mohammed is at risk of being

rendered, expelled or returned without lawful procedures to a country that

engages in torture.  The transfer of the Petitioner to a country that creates a

foreseeable and direct risk that he will be subjected to torture constitutes a

violation of Petitioner's rights under the Due Process Clause of the Fifth

Amendment to the United States Constitution.

98.    Accordingly, Petitioner bin Mohammed is entitled to declaratory and

injunctive relief, as well as any other relief the court may deem appropriate.

SIXTEENTH CLAIM FOR RELIEF

(CONVENTION AGAINST TORTURE AND
CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

99.    Petitioners incorporate by reference all preceding paragraphs as if set forth

fully herein.

100.    Upon information and belief, Petitioner bin Mohammed is at risk of being

rendered, expelled or returned without lawful procedures to a country that

engages in torture.  The transfer of the Petitioner to a country that creates a

foreseeable and direct risk that he will be subjected to torture constitutes a

direct violation of Petitioner's rights under the Covenant Against Torture and

the 1954 Convention Relating to the Status of  Refugees, 19 U.S.T. 6259, 189

U.N.T.S. 150 *entered into force* Apr. 22, 1954.

101.    Accordingly, Petitioner bin Mohammed is entitled to declaratory and

injunctive relief, as well as any other relief the court may deem appropriate.

SEVENTEENTH CLAIM FOR RELIEF

(ALIEN TORT STATUTE- RENDITION)

102.   Petitioners incorporate by reference all preceding paragraphs as if set forth

fully herein.

103.   Upon information and belief, Petitioner bin Mohammed is at risk of being

rendered, expelled or returned without lawful procedures to a country that

engages in torture.  The transfer of the Petitioner to a country that creates a

foreseeable and direct risk that he will be subjected to torture constitutes a

violation of Petitioner's rights under customary international law, which may

be vindicated under the Alien Tort Statute.

104.   Accordingly, Petitioner bin Mohammed is entitled to declaratory and

injunctive relief, as well as any other relief the court may deem appropriate.

**V.     PRAYER FOR RELIEF**

WHEREFORE, Petitioners pray for relief as follows:

1.     Designate Moazzam Begg as Next Friend of Petitioner bin Mohammed;

2.     Grant the Writ of Habeas Corpus and order Respondents to release Petitioner

bin Mohammed  from his current unlawful detention;

3.     Order that Petitioner bin Mohammed be brought before the Court or before a

Magistrate Judge assigned by the Court to conduct proceedings under the

supervision of the Court to vindicate his rights;

4.      Order that Petitioner bin Mohammed cannot be transferred to any other
        country without the specific written agreement of Petitioner and Petitioner's
        counsel while this action is pending;

5.      Order that Petitioner bin Mohammed cannot be delivered, returned, or
        rendered to a country where there is a foreseeable and imminent risk that
        Petition will be subject to torture;

6.      Order Respondents to allow counsel to meet and confer with Petitioner bin
        Mohammed, in private and unmonitored attorney-client conversations;

7.      Order Respondents to cease all interrogations of Petitioner bin Mohammed,
        direct or indirect, while this litigation is pending;

8.      Order Respondents to cease all acts of torture and cruel, inhuman and
        degrading treatment of Petitioner bin Mohammed;

9.      Order and declare the Executive Order of November 13, 2001 is *ultra vires*
        and unlawful in violation of Article II of the United States Constitution, the
        Fifth Amendment to the U.S. Constitution, the Uniform Code of Military
        Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the
        United States and customary international law;

10.     Order and declare that the prolonged, indefinite, and restrictive detention of
        Petitioner bin Mohammed without due process is arbitrary and unlawful and a
        deprivation of liberty without due process in violation of common law
        principles of due process, the Due Process Clause of the Fifth Amendment to
        the United States Constitution, the regulations of the United States military,

the treaties of the United States, and customary international humanitarian law; and

11.     Grant such other relief as the Court may deem necessary and appropriate to protect Petitioner's rights under the common law, the United States Constitution, federal statutory law, and international law.

Respectfully submitted,

Counsel for Petitioners:

Dated: June 30, 2005

By: _____

Jerry Cohen
DC Bar No. 87759
PERKINS SMITH & COHEN LLP
One Beacon Street
Boston, MA 02108
Tel: (617) 854-4000
Fax: (617) 854-4040
Email: jcohen@pscboston.com

OF COUNSEL:

Barbara Olshansky (NY0057)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499