Pre-approved by CSO for ECF filing

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: | ) |
| | ) |
| GUANTANAMO BAY | ) **Misc. 08- 442  (TFH)** |
| DETAINEE LITIGATION | ) |
| | ) **Civil Action No. 05-mc-1347 (GK)** |
| | ) **Civil Action No. 08-cv-1185 (HHK)** |

## PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION FOR PARTIAL AND TEMPORARY RELIEF FROM THE COURT'S JULY 11, 2008 SCHEDULING ORDER

Petitioners Farhi Saeed bin Mohammed (ISN 311) and Mohammed Abd Al Al Qadir (ISN 284) ("Petitioners") hereby oppose Respondents' Motion for Partial and Temporary Relief from the Court's July 11, 2008 Scheduling Order ("Motion"). This Court should strike or deny Respondents' motion, and order such sanctions as the Court deems meet and just, in order to deter Respondents' from failing or refusing to comply with valid orders of the court.   Petitioners also endorse and adopt Petitioners' Response To Respondents' Motion For Relief From Scheduling Order filed this date in Related Case Misc. No. 08-0442 (TFH), Civil Action No. 04-1254 (attached hereto as Exhibit "A" and incorporated herein by reference,) including both sanctions proposed therein and the arguments in support of same.

Petitioners in this case have been waiting in prison cells at Guantánamo Bay Naval Station since the winter of 2002.  Petitioner Al Qadir was finally transferred to the custody of the government of Algeria on or about August 27, 2008.  While Petitioner bin Mohammed filed his petition for writ of habeas corpus in 2005, Petitioner Al Qadir did not have benefit of counsel prior to December 30, 2005, when Congress stripped those who had not yet filed of the right to habeas corpus review.  Despite requests by both Petitioners, and despite the fact that Petitioners'

counsel possess "secret" security clearances, Respondents have failed or refused to provide anything more than the same unclassified portion of the final CSRT proceedings that is available to the public in either case. Since Petitioner bin Mohammed's case was filed in 2005, it has been mired in the jurisdictional dispute that was finally resolved by the United States Supreme Court in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008). Yet now, almost three months after the Supreme Court's decision and despite the Supreme Court's admonition that "the costs of delay can no longer be borne by those who are held in custody" (*id.* at 2275), Respondents have defied this Court's Scheduling Order and have instead moved for at least another month of delay in virtually all of the coordinated habeas cases.

This Court should deny Respondents' Motion for relief (a) from a schedule Respondents themselves requested, and (b) for which Respondents have utterly failed to show good cause. The Court should further rule that, unless Respondents file by the end of October the Petitioners' complete returns, Respondents will waive their opportunity to do so. In that event, Petitioners' cases should proceed expeditiously on their respective petitions and the CSRT records that Respondents have chosen to rely upon as "justification" for holding Petitioners for almost seven years.

## I.    This Court Ordered Respondents To Produce 50 Factual Returns Per Month, With No Exceptions Absent Good Cause.

On July 2, 2008, Judge Kessler and Judge Kennedy, as well as other judges of this court ordered most of the habeas petitions filed by Guantánamo detainees to be transferred to Judge Thomas F. Hogan for purposes of coordination and management "so that these cases can be addressed as expeditiously as possible per the Supreme Court's decision in *Boumediene v. Bush*." (Dkt. 1.) This Court held a status conference on July 8, 2008, at which the parties expressed their views on how these cases should be managed and scheduled. Counsel for

Petitioners expressed concern that Respondents might use the Court's efforts to coordinate these cases as a further opportunity for delay.

At the status conference on July 8, 2008, and in letters and pleadings filed before and after the conference, Respondents requested that they be allowed until the end of August 2008 to file factual returns and motions for leave to amend returns in the first 50 cases (one of which is 05cv-1347, that of Petitioner bim Mohammed) and that they be allowed to continue filing returns and motions for leave to amend returns at a rate of 50 per month after that. (Dkt. 39.) Petitioners opposed the request, but Respondents assured this Court that their request for a "short lead time" would best facilitate expeditious adjudication of the cases (*id*.) and that they were "dedicating substantial resources to facilitate the expeditious handling of these cases." (*Id*. at Ex. A.)

At the July 8, 2008 hearing, Judge Hogan explicitly directed Respondents to alert other agencies that proceedings in these cases must be a top priority:

> I think the government has to understand, they're going to set aside every other case that's pending before them in their division, and address these cases first. Put them on notice that I expect the corresponding agencies to do the same; that they're now in a court process, the Supreme Court has spoken, has asked strongly that these be handled promptly.

(July 8, 2008 Hearing Transcript, at 82.) Judge Hogan also warned that delays would be granted only "rarely" and only upon a showing of good cause:

> I'm concerned about time and extensions. And whatever I decide, I would anticipate the parties will follow and that motion[s] for extension will be rarely granted. And that any type of extension would have to be approved by the court. It makes no sense to set a schedule to make continuances.

(*Id*. at 60.)

Over Petitioners' objections, the Court gave Respondents precisely the Scheduling Order they asked for, allowing them until August 29, 2008 to prepare returns and motions to file

amended returns in the first 50 pending cases, and allowing Respondents to file returns and motions to amend at a rate of 50 cases per month thereafter. (Dkt. 53, Scheduling Order.) Under the Scheduling Order, Respondents must file Petitioners' unredacted factual returns by the end of October 2008.

As Judge Hogan stated at the July 8 hearing, the Scheduling Order allows Respondents to request exceptions to the sequencing only:

> if the government believes that an individual factual return is significantly more complicated than others or a particular detainee's circumstances present unique issues that require more time to complete the return such that processing the return would delay the overall processing . . . . As with amendments, the Court will only allow exceptions where the government establishes cause. (*Id.* at ¶ 4.)

> The plain intent of the Scheduling Order is to allow exceptions only on a case-by-case basis, based on good cause, and solely in order to avoid delays in the processing of other cases. The Scheduling Order does not anticipate that a delay would be requested, much less granted, for the filing of virtually *all* amended returns without a particularized showing of good cause. As Judge Hogan stated at the July 8 hearing: "delays . . . would reflect badly and would cause the Court to become perhaps not only concerned, but suspicious of the necessity for further delay, which could -- to the detriment of the government in how we proceed with these cases and take them to trial." (Transcript at 91.)

## II.    Respondents' Motion Fails To Establish Good Cause, Aims To Perpetuate Delay, And Should Be Denied By This Court.

At midnight on the Court's deadline for the filing of 50 returns and motions for leave to amend returns, Respondents requested an extension of the very schedule they requested. Instead of filing 50 returns in these coordinated cases, Respondents filed 10 in the coordinated cases and 12 in the handful of cases pending before Judges Leon and Sullivan. Respondents requested this extension after the deadline had passed, without any effort to meet and confer with Petitioners' counsel, and without any showing of good cause. In their Motion, Respondents announce that they have been "unable to complete" the filing of the first 50 factual returns, request an additional 30 days to file these returns, and express "hope" to produce 50 factual returns per month thereafter. (Respondents' Motion at 1, 12-13.) Nowhere in Respondents' Motion is there any indication – much less assurance – that Respondents will comply with their "hoped for" schedule. Instead, Respondents promise only to "strive" to do so. (*Id.* at 12.) Respondents'

equivocal language strongly suggests that they are laying the groundwork now for more missed

deadlines and requests for extensions of time in the future.

The reasons offered by Respondents do not come close to showing good cause for

granting their Motion.  First, Respondents contend that they "could take only limited steps to

prepare for the defense of claims by the Guantanamo detainees" until the Supreme Court issued

the *Boumediene* decision.  (*Id.* at ¶ 4.)  Nonsense.  Petitioners filed their habeas petitions in 2005,

after the Supreme Court had already ruled that this Court had jurisdiction under the habeas

statute to hear the habeas claims of Guantánamo prisoners.  *Rasul v. Bush*, 542 U.S. 466, 484

(2004).  Respondents doggedly opposed this Court's jurisdiction in the federal courts and in

Congress, but that did not prevent Respondents from preparing their defense of Petitioners'

habeas claims.  The fact that those claims now rest on constitutional grounds does not alter the

fundamental issue in this case:  Respondents must justify their detention of Petitioners.  That was

the issue in 2005, and it remains the issue today.

Second, Respondents claim that DoD needs more time to gather the information that

would justify Petitioners' detention.  (Respondents' Motion at 4.)  But more than four years ago,

Deputy Secretary of Defense Paul Wolfowitz claimed that every Guantánamo prisoner had

already "been determined to be an enemy combatant through *multiple levels of review* by officers

of the Department of Defense."  (Order Establishing Combatant Status Review Tribunal, July 7,

2004, at 1, emphasis added, attached as Exhibit A.)  Apparently Respondents believe that their

earlier "multiple levels of review" relied on inadequate justifications for detaining Petitioners

that must now be supplemented.  According to DoD, its 30-lawyer team has reviewed less than

1,900 documents within the past 30 days – an average of less than three documents per lawyer

per business day.  (Respondents' Motion, Ex. B at ¶¶ 5, 7.)  Respondents also request additional

time so that DoJ may draft a "narrative that summarizes the case for detaining the petitioner as an enemy combatant." (*Id.,* Ex. C at ¶ 9.) That is exactly what Respondents claimed to have included in the CSRT record. Respondents' desire to bolster their purported justifications or to "develop the Government's best possible case" (Respondents' Motion, at ¶ 8), cannot override the Supreme Court's clear mandate: Petitioners "are entitled to a prompt habeas corpus hearing." *Boumediene,* 128 S. Ct. at 2275.

Third, Respondents claim that the CIA needs 30 days to review and approve each factual return before it can be submitted to the Court, Petitioners' counsel, or the public.[1] (Respondents' Motion at ¶¶ 8-9.) Although Petitioners have not seen (and therefore object to) the classified portions of the declaration submitted by CIA Director Michael V. Hayden, Director Hayden's unclassified declaration shows that Respondents have no excuse for missing this Court's deadline. Director Hayden reports that DoJ and DoD (with, according to Respondents, between 50 and 80 full-time attorneys) produced their first factual return for CIA review on August 12, 2008 – more than a month after the Scheduling Order. (Respondents' Motion at ¶ 19.) This belies Respondents' claims that they are working diligently to expedite the factual returns.

Although Respondents profess to encounter difficulties in obtaining timely interagency clearance of newly drafted factual returns, these alleged difficulties are entirely within Respondents' control to resolve. Respondents decided to rely "extensively" on information that

---

[1] Filing a classified factual return under seal does not risk public disclosure of classified information. Petitioners' counsel already have "secret" level security clearance from the government and are authorized to access and review "secret" level classified documents. Indeed, DoJ informed Petitioners' counsel that they received a more extensive background check so that counsel's clearance level could be upgraded quickly to "top secret" if necessary. It is unclear to Petitioners' counsel why they or the Court should be prohibited from reviewing the newly drafted factual returns until the documents are cleared by the CIA, and Respondents have cited

they designated as classified, they delayed in compiling and reviewing the information among themselves, and they decided to include DoJ narratives. (Respondents' Motion at 3, 6.) The Court should not permit such self-engineered hurdles to justify Respondents' delay. Respondents' last-minute filing is based not on good cause, but on tactical considerations or, at best, a failure of leadership in the departments involved. (*See id.*, Ex. B at ¶ 7, Ex. C. at ¶ 13, Ex. D at ¶ 19.)

Petitioners have been detained since 2002, and their habeas cases have been pending since 2005. Respondents have sought to delay Petitioners' cases at every opportunity. The purpose of having a single judge to coordinate the habeas cases for management purposes cannot be realized if Respondents are permitted to disregard the management orders with impunity. In order to preserve the intent of the coordination of habeas cases to address the cases as expeditiously as possible, this Court should enforce its Scheduling Order strictly, particularly where – as here – there is no good cause shown for an exception. It is long past time to test Respondents' basis for holding Petitioners in a fair hearing before an independent judge.

---

no DoJ or DoD authority, policy, or procedure requiring that such a process be followed.

**Conclusion**

Respondents' last-minute filing makes clear that Respondents are still attempting to

impose the "costs of delay" upon those held in prison.  This Court should enforce the Supreme

Court's ruling that "the detainees in these cases are entitled to a prompt habeas corpus hearing,"

*Boumediene*, 128 S. Ct. at 2275, deny Respondents' Motion, and rule that Respondents will

waive their opportunity to file factual returns or motions for leave to amend returns if they do not

comply with the Court's Order of July 11, 2008.

September 8, 2008                               Respectfully submitted,

                                               _____/s/_____

                                               Jerry Cohen (MA BBO#116413)
                                               BURNS &LEVINSON
                                               125 Summer Street
                                               Boston, MA 02110
                                               tel: (617) 345 3000
                                               fax: (617) 345 3299
                                               e-mail: jcohen@burnslev.com


                                               _____/s/_____
                                               Stewart Eisenberg (MA BBO#152180)
                                               WEINBERG & GARBER, P.C.
                                               71 King Street
                                               Northampton, MA 01060
                                               413-582-6886 (phone)
                                               413-582-6881 (fax)
                                               email: buz.e@verizon.net

                                               ***Counsel for Farhi Said bin Mohammed (ISN 311)***
                                               ***Counsel for Mohammed Abd Al Al Qadir (ISN
                                               284)***

9

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2008, I filed and served the foregoing Petitioners'

Opposition to Respondents' Motion for Partial and Temporary Relief From the Court's July 11,

2008 Scheduling Order to be delivered to the counsel listed below in the above-captioned matter

through the CM/ECF system:

> Andrew I. Warden
> United States Department of Justice
> Civil Division, Federal Programs Branch
> 20 Massachusetts Avenue NW
> Washington, D.C. 20530
>
> Terry Marcus Henry
> United States Department of Justice
> Civil Division, Federal Programs Branch
> 20 Massachusetts Avenue NW
> Washington, D.C. 20530

 /s/ Jerry Cohen

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:                          )      Misc. No. 08-0442 (TFH)
GUANTANAMO BAY                  )
DETAINEE LITIGATION             )      Civil Action No. 04-1254 (HHK)

## PETITIONERS' RESPONSE TO RESPONDENTS'
## MOTION FOR RELIEF FROM SCHEDULING ORDER

The Court should strike Respondents' motion. First, Respondents failed to confer with

Petitioners' counsel in violation of Local Civil Rule 7(m). The Court has severely sanctioned

parties in other cases for less consequential violations of the rule. Second, Respondents filed

their motion so late—literally, at the last minute, 11:59 p.m., on August 29, 2008—as to secure

for themselves in substantial measure the very relief their motion seeks, without a ruling on their

motion. The Court should not countenance such self-help.

Alternatively, the Court should deny Respondents' motion. First, the motion makes clear

that Respondents do not consider themselves bound by deadlines set by the Court. No private

party would dare treat the Court's deadlines as merely aspirational or be allowed to do so.

Second, granting the motion would substantially prejudice Petitioners by delaying their habeas

hearings, contrary to the Supreme Court's admonition in *Boumediene* that Petitioners are entitled

to "a *prompt* habeas corpus hearing" and must no longer be made to bear "the costs of delay."

Third, Respondents' excuses are unpersuasive; their difficulties are of their own making; and

their motion is just another delaying tactic.

The Court must do more than tell Respondents to go forth and sin no more. The Court

should order Respondents to adhere to the Scheduling Order. Moreover, to sanction

Respondents for violating the order and deter future violations, the Court should automatically

deny all late-filed motions to amend, including motions due by August 29, 2008, unless a Petitioner waives his objection to a late filing. The Court should fine Respondents $10,000 for each of delay in the filing of an original return. Nothing less will do to ensure Respondents' compliance with the Court's deadlines and protect Petitioners' rights.

## STATEMENT OF FACTS

1.    On July 8, 2008, the Court held a status conference at which it invited the parties to express their views as to how these cases should be managed and scheduled. Respondents asked to be allowed until the end of August to file motions for leave to amend factual returns in the first fifty cases and to continue filing motions for leave to amend returns at a rate of fifty per month after that. *See* Notice by Resp'ts, Misc. No. 08-442 (July 9, 2008) (Doc. 39). Respondents assured the Court that their request for a "short lead time" would best facilitate expeditious adjudication of the cases (*id.*), and that they were "dedicating substantial resources to facilitate the expeditious handling of these cases." *Id.* at Ex. A, Letter from Gregory G. Katsas to Hon. Royce C. Lamberth and Hon. Thomas F. Hogan (June 30, 2008).

2.    The Court gave Respondents the scheduling order they had requested. In so doing, however, the Court admonished Respondents to make known to other agencies that proceedings in these cases must be a top priority:

> I think the government has to understand, they're going to set aside every other case that's pending before them in their division, and address these cases first. Put them on notice that I expect the corresponding agencies to do the same; that they're now in a court process, the Supreme Court has spoken, has asked strongly that these be handled promptly.

July 8, 2008 Hearing Tr. at 82. The Court also warned that delays would be granted only "rarely" and only upon a showing of good cause:

> I'm concerned about time and extensions. And whatever I decide, I would anticipate the parties will follow and that motion[s] for extension will be rarely granted. And that any type of extension would have to be approved by the court. It makes no sense to set a schedule to make continuances.

*Id.* at 60.

    3.    Respondents now request an additional thirty days to complete their filing of the first round of returns and offer the Court only their "hope" that they will meet later deadlines, *See, e.g.,* Resp'ts' Mot. at 1, and a pledge to "strive" to do so, *id.* at 12. Nowhere in Respondents' motion do they assure the Court that they *will* comply with any deadline. It does not take a crystal ball to anticipate what Respondents will be telling the Court a month from now.

**ARGUMENT**

**I.**    **THE COURT SHOULD STRIKE RESPONDENTS'' MOTION.**

    **A.**    **Respondents Violated Local Civil Rule 7(m).**

        **1.**    **Rule 7(m) is not a mere formality.**

Local Civil Rule 7(m) provides, in pertinent part:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement.

Rule 7(m) serves important institutional purposes, and this Court does not treat violations of the rule lightly. *See Ellipso, Inc. v. Mann,* 460 F. Supp. 99, 102 (D.D.C. 2006).[2] It is no answer that the litigants believe that conferring would be pointless. As Judge Hogan has stated:

> A meet and confer session is required under Local Civil Rule 7.1(m) regardless of whether or not the litigants believe it will be productive. *Niedermeier v. Office of Max S. Baucus,* 153 F. Supp. 2d 23, 27 (D.D.C. 2001) (Hogan, C.J.). The purpose of this rule is "for litigants to attempt to resolve, or . . . narrow, the disputed issues to prevent unnecessary waste of time and effort on any given motion," not "to simply determine whether the motion will be opposed." *Alexander v. FBI,* 186 F.R.D. 185, 187 (D.D.C. 1999) (Lamberth, J.).

---

[2]    *See Penobscot Indian Nation v. HUD,* Civ. No. 07-1282 (PLF), 2008 WL 635740, at *1 (D.D.C. Mar. 5, 2008) (order denying motion to strike); *Humane Soc'y v. Amazon.com, Inc.,* Civ. No. 07-623 (CKK), 2007 WL 1297170, at *3-4 (D.D.C. May 1, 2007) (denying motion for leave to depose); *Canady v. Erbe Elektromedizin GmbH,* 271 F. Supp. 2d 64, 75 (D.D.C. 2002). *See also United States v. Sci. Applications Int'l Corp.,* 555 F. Supp. 2d 40, 47 (D.D.C. 2008) (denying motion to strike because party failed to comply with Rule 7(m) and to meet its heavy burden in filing its motion to strike).

*Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 71 n.7 (D.D.C. 2002) (Hogan, C.J.); *see also United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008).

To be sure, the Court has occasionally stopped short of sanctioning an offending party, instead admonishing the party to comply with the rule in the future.[3] Such cases, however, are the exception, not the rule; and the government, of all litigants, is not entitled to such leniency, especially where, as here, so much is at stake. *See Gray Panthers v. Schweiker*, 716 F.2d 23, 33 (D.C. Cir. 1983) ("There is, indeed, much to suggest that government counsel have a higher duty to uphold because their client is not only the agency they represent but also the public at large.").

Respondents also violated Rule 7(m) because they did not confer with counsel for *each* potentially affected Petitioner. This is not a class action. The litigation involves habeas petitions filed by or on behalf of individual petitioners. Accordingly, when Respondents wish to file a motion affecting multiple Petitioners, Rule 7(m) requires them to confer with counsel for each such Petitioner. In these cases, Petitioners' counsel will endeavor to lighten Respondents' Rule 7(m) load by conferring with them on a collective basis.

## B. Granting The Motion Would Reward Respondents' Self-Help.

Respondents obviously knew well before the August 29, 2008 deadline that they did not expect to meet the deadline. They could have alerted Petitioners' counsel and the Court that they intended to seek relief from the deadline, leaving enough time for consideration of their motion before the deadline. Instead, Respondents waited until literally the last minute on August 29, 2008 to file their motion for relief. By filing their motion so late, Respondents secured for themselves in substantial measure the very relief their motion seeks, without having to justify their request for relief to the Court. This practice should not be tolerated. As Justice Rehnquist, sitting as a Circuit Justice, stated in an analogous context:

> To use the technique of a last-minute filing as a sort of insurance to get at least a
> temporary stay when an adequate application might have been presented earlier,
> is, in my opinion, a tactic unworthy of our profession.

*Evans v. Bennett*, 440 U.S. 1301, 1307 (1979) (Rehnquist, Circuit Justice). Indeed, the Seventh Circuit has rebuked the Department of Justice for filing a motion for an extension of time to file a brief on the day the brief was due, thereby securing the relief the government sought without a ruling on its motion. *Ramos v. Ashcroft*, 371 F.3d 948, 949-50 (7th Cir. 2004) ("Filing motions in lieu of briefs, a form of self-help extension, has become increasingly common but is not authorized by any rule, either national or local."). The government, however, never learns. *See United States v. Lloyd*, 398 F.3d 978, 980 (7th Cir. 2005) (again deploring "the litigation strategy adopted by the United States").

The Court should strike Respondents' motion and sanction them to deny them any benefit from their last-minute self-help filing and to deter them from repeating this behavior.

## II.    THE COURT SHOULD DENY RESPONDENTS MOTION.

### A.    Respondents Effectively Seek Leave To Miss Deadlines.

The Court should deny Respondents' motion because they do not commit themselves to meeting future deadlines. Respondents' motion purports to seek "partial and temporary" relief from the deadlines set by the Court in the Scheduling Order. (Of course, there is noting "temporary" or "partial" about Respondents' request to move each monthly deadline back 30 days.) In reality, however, Respondents claim a right to miss any future deadlines, leaving no doubt that they will consider any deadlines set by the Court purely aspirational. Thus, for example, Respondents state: "We *expect* to finish production of the first 50 returns on a rolling basis through-out September, and *hope* to achieve production of the returns at that rate each months thereafter." Resp'ts' Mot. at 4 (emphasis added). They state that they "will continue to *strive* to "meet the 50-per-month requirement." *Id.* at 12 (emphasis added). Respondents offer only to do what they

---

[3]    *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 31-32 (D.D.C. 2007); *Alexander v. F.B.I.*, 186 F.R.D. 197, 199 (D.D.C. 1999); *Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 71 (D.D.C. 2002).

can, in their own fashion and at their own pace, to meet the Court's deadlines, and just too bad for Petitioners if Respondents do not come through.[4]

### B.    Granting the Motion Would Prejudice Petitioners.

This prejudice is self-evident and we need not belabor it.  The Supreme Court in *Boumediene*, and this Court in these proceedings, have made the point in the most emphatic terms.  Petitioners have been making the point since February 2002.  It is past time to permit more delay.

### C.    Respondents' Excuses For Delay Are Unpersuasive.

Although Respondents profess to encounter difficulties in obtaining timely interagency clearance of newly drafted factual returns, these alleged difficulties are entirely within Respondents' control to resolve.  Respondents decided to rely "extensively" on information not previously used to justify Petitioners' detention that they have designated as classified; they delayed compiling and reviewing the information, and they decided to include DOJ narratives.  Resp'ts' Mot. at 3, 6.  Such self-engineered hurdles cannot justify Respondents' delay.

Respondents have had between twenty and fifty attorneys from DOJ and thirty attorneys from the DoD working full time on these cases.  *See id.*, Exh. B, Dell'Orto Decl., ¶ 3; Exh. C, Katsas Decl. ¶ 5.  According to Daniel J. Dell'Orto, Acting General Counsel of DoD, DoD's thirty-person team reviewed 1,900 classified documents in 30 days, working at a snail's pace of

---

[4]    Petitioners do not contend that Respondents may never obtain an extension for filing a return.  Scheduling Order ¶ 4 provides:

> [I]f the government believes that an individual factual return is significantly more complicated than others or a particular detainee's circumstances present unique issues that require more time to complete the return such that processing the return would delay the overall processing, the government shall move for an exception to the sequencing described above.  As with amendments, the Court will only allow exceptions where the government establishes cause.

barely over 3 documents per person per day, excluding weekends. *See* Dell'Orto Decl. ¶¶ 5-7.

Considering that the DTA and DoD's own regulations require annual reviews of detainee files to

determine whether continued detention is warranted, cite, DoD's dismal performance is inexcus-

able (and casts considerable doubt on the thoroughness of its annual reviews).

Although Petitioners have not been permitted to see (and therefore object to) the *ex parte*

classified portions of the declaration submitted by CIA Director Michael V. Hayden,[5] Director

Hayden's unclassified declaration is sufficient to show that the government lacks any excuse for

failing to meet this Court's deadline. Even after *Boumediene* was decided, on June 12, 2008,

DOJ and DoD waited until July to assemble staff and resources. *See* Resp'ts' Mot. at 3.

Moreover, according to Director Hayden, Respondents did not provide the first factual returns

for CIA review until August 12, 2008, six weeks after Respondents first suggested a deadline of

August 29, 2008, and *two months* after Boumediene was decided; and Respondents provided

CIA with returns for the first fifty cases as late as August 25, 2008. *See* Hayden Decl. ¶ 19.

Between fifty and eighty DOJ and DoD lawyers, therefore, took well over a month from the

issuance of this Court's scheduling order, and two months after *Boumediene* was decided, to

generate even a single draft return for CIA review. Any burden Respondents must shoulder now

results from their own decision to junk the original CSRT returns and instead start from scratch,

and from their failure to allow themselves adequate time to do so. *Cf. Boumediene v. Bush*, 128

S. Ct. 2229, 2278 (2008) (Souter, J., joined by Ginsburg & Breyer, JJ., concurring) ("[W]hether

one agrees or disagrees with today's decision, it is no bolt out of the blue.").[6]

---

[5]    Petitioners also object to Director Hayden's suggestion that he be allowed to testify *in camera, ex parte.* Any such testimony should be under oath and subject to cross-examination by Petitioners' counsel with appropriate security clearances.

[6]    The first detailed DOJ lawyers did not arrive until sometime in July; *see id.*, Exh. C, Katsas Decl. ¶ 7, and the first detailed DoD lawyers did not arrive until mid-July, *see id.*, Exh. B, Dell'Orto Decl. ¶ 3. It is no coincidence that Respondents' decision to start from scratch guarantees that habeas hearings for most Petitioners will be delayed long past the time such hearings would have been held had Respondents relied on the original returns, which

Respondents profess to encounter difficulties in obtaining timely interagency clearance of amended factual returns. This excuse is not credible. The original proceedings in first-filed habeas cases, involving habeas petitions on behalf of more than sixty Petitioners, prove the point. Respondents were able to assemble, submit for interagency classification review, and produce returns for more than fifty Petitioners within six weeks. Here, Respondents insist that it will take them about three months—nearly twice as long as in 2004—to do the same.[7]

Underlying Respondents' declarations explaining why Respondents have failed to meet the Court's deadline is not that they need more time to gather information, but that the CIA has decided that it must conduct a painstaking "line-by-line" review of classified information (Hayden Decl. ¶ 13) to determine what can be released to counsel who already have the security clearance required for access to this information. Ignoring their ability and willingness to produce classified returns to Petitioners in half the time four years ago, Respondents now assert that the time-consuming review is required before the information can be released outside the Executive Branch. Respondents cite no authority imposes such a requirement, and such a

---

Respondents long insisted were adequate to justify Petitioners' detention. All of a sudden, Respondents treat those returns as worthless. Respondents' decision to start from scratch is the *only* reason they have to complain of any burden resulting from the Court's deadlines.

[7]    In a submission dated August 20, 2004 requesting coordination of the pending habeas cases, Respondents asserted, as they do here, that "the information concerning [Petitioners'] seizure and detention has not been maintained in a manner that would facilitate presentation to the Court or a format that is appropriate for submission to the Court. Thus, a significant review and assembly process is necessary to formulate appropriate responses to these petitions." Respondents' Motion To Postpone Response To Petition For Writ Of Habeas Corpus Pending Development Of Coordinated Schedule For Pending Guantanamo Bay Detainee Cases, at 10 n.6 (D.D.C. Aug. 20, 2004) (Doc. 11). As here, Respondents also told the Court that "[s]ome of the information could be classified or otherwise protected, which would require establishment of mechanisms for the segregation and handling of such information in consultation with the originating agencies." *Id.* Yet, in an August 31, 2004 submission in those proceedings, Respondents proposed (and Judge Joyce Hens Green adopted their proposal) to submit the factual returns for the sixty-plus Petitioners on a rolling basis, with the first factual returns to be submitted on or around September 8, 2004 (a week after Respondents proposed their schedule), the majority of the returns by the end of September 2004, and all of the factual returns by the week of October 18, 2004 (six weeks after Respondents proposed their schedule). Respondents substantially complied with the Court's schedule, producing more than fifty returns by October 29, 2008, less than two weeks after their proposed deadline, and less than two months after proposing the schedule. Order Setting Final Deadline For Submission Of Factual Returns, *Abdah v. Bush*, Civ. No. 04-1254 (D.D.C. Oct. 29, 2004) (Doc. 49).

restriction on dissemination of classified information is not normal practice. (Kaplan Decl. ¶ __).

With all due respect, this self-imposed requirement is simply another delaying tactic. Director Hayden suggests that, notwithstanding their security clearances and the severe criminal and civil sanctions they would face for unauthorized disclosure of classified information, *Petitioners' counsel cannot be trusted.* This excuse also is not credible. Over the last four years, DoD has made available to cleared counsel in multitudes of habeas cases the classified information in Petitioner's CSRT records; Respondents have never alleged, much less proven, that any counsel for Petitioners has improperly disclosed classified information. Yet Director Hayden now asserts that, if classified information is provided to counsel, "unauthorized disclosures . . . are not only probable, but inevitable." Hayden Decl. ¶ 12. The Director's concern with Petitioners' counsel would appear to be misdirected, as the mishandling of classified information by the Attorney General, the National Security Agency, and former CIA Director John M. Deutch, among others, attests.[8]

Petitioners do not now ask Respondents to declassify any information or to provide classified information to anyone not authorized to receive it. But in these cases, Respondents' own investigators, applying Respondents' own criteria, have determined that certain of the counsel for Petitioners are of sufficient integrity, loyalty, and reliability to be trusted with certain categories of classified information. After four years of experience, Respondents cannot now in good faith say that they cannot trust counsel to have access to these very categories of classified

---

[8]    *See, e.g.,* Office of Inspector General Oversight and Review Division, U.S. Department of Justice, *Report of Investigation Regarding Allegations of Mishandling of Classified Documents by Attorney General Alberto Gonzales* (Sept. 2, 2008), *available at* www.usdoj.gov/oig/special /s0809/final.pdf.; Dan Eggen, "Justice Dept. Investigating Leak of NSA Wiretapping; Probe Seeks Source Of Classified Data," Wash. Post, Dec. 31, 2005, at A1, *available at* http://www. washingtonpost.com/wp-dyn/content/article/2005/12/30/AR2005123000538_pf.html; *Central Intelligence Agency Inspector General, Report of Investigation: Improper Handling of Classified Information by John M. Deutch* (1998-0028-IG) (Feb. 18, 2000), *available at* http://www. fas.org/irp/cia/product/ig_deutch.html.

information. And Respondents certainly should not be permitted to use their unfounded mistrust of Petitioner's counsel to impose a specially invented review process for the materials that they have decided to use, and then tell the Court that the process they have imposed upon themselves is so cumbersome and time-consuming that they cannot meet deadlines Respondents themselves proposed. And this special review process is particularly inappropriate here because, in the overwhelming majority of the habeas cases, the classified information Respondents rely upon is readily available to tens of thousands of individuals with appropriate security clearances (Kaplan Decl. ¶ __), and there is no indication that more highly classified or more stringently controlled information will be used in the future.[9]

## III.    THE APPROPRIATE SANCTION IS DEFAULT AND A FINE.

The Court cannot ensure that Respondents will comply with the Court's deadlines, subject to any extensions granted in individual cases, see Scheduling Order ¶ 4, unless it makes Respondents pay a price for violating its deadlines. In the case of late-filed amended returns, the appropriate sanction for Respondents' violation of the August 29, 2008 is to automatically deny the late-filed motions, unless a Petitioner waives his objection to the late filing. In the case of late-filed original returns, the appropriate sanction is a fine of $10,000 for each of delay. Such sanctions will deny Respondents any benefit from their violation of the August 29, 2008 and future deadlines.

Petitioners have conferred with Respondents by telephone, as contemplated by Rule 7(m), "to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement." Respondents oppose the relief sought.

---

[9]    The exception is the small number of habeas cases involving so-called "high value detainees," previously held in secret CIA prisons, in which the government apparently relies on Top Secret/SCI information, but those cases are not at issue here. To the extent that, in certain other cases, Respondents' are considering using more

## CONCLUSION

The Court should strike or deny Respondents' motion and order the sanctions described above. A proposed order is attached for the Court's convenience. All Petitioners in the above-listed cases join in this response to Respondents' motion.

Respectfully submitted,


/s/

_____

David H. Remes

D.C. Bar. No. 370372

APPEAL FOR JUSTICE

1106 Noyes Drive

Silver Spring, MD 20910

(202) 669-6508 (phone)

remesdh@gmail.com


S. William Livingston

D.C. Bar. No. 59005

Alan A. Pemberton

D.C. Bar. No. 367108

COVINGTON & BURLING LLP

1201 Pennsylvania Ave., N.W.

Washington, DC 20004-2401

(202) 662-6000 (phone)

_____

highly classified information or SCI information, it should promptly identify these other cases to the Court and

(202) 778-6000 (fax)

wlivingston@cov.com

apemberton@cov.com


Marc D. Falkoff

D.C. Bar No. 491149

NORTHERN ILLINOIS UNIVERSITY

COLLEGE OF LAW

DeKalb, IL 60614

(347) 564-5043 (phone)

(815) 753-9301 (fax)

mdf19@columbia.edu


J:\Docs\31549\00001\01279450.DOC

arrange for swift investigations of counsel requiring the appropriate security clearances.